UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES JUICE CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>JMF GROUP, LLC d/b/a<br>AL'S BEVERAGE CO.,<br><br>        Defendant. | Case No.: 2:06-CV-0288-RLH-LRL<br><br>**O R D E R**<br><br>(Motion to Dismiss – #19) |

Before the Court is Defendant JMF Group, LLC, d/b/a Al's Beverage Co.'s (hereinafter ABC) **Motion to Dismiss** (#19), filed May 12, 2006. The Court has also considered Plaintiff United States Juice Corporation's (hereinafter US Juice) Opposition (#21), filed May 30, 2006, as well as ABC's Reply (#22), filed June 13, 2006.

**BACKGROUND**

The Plaintiff, US Juice, is a Nevada corporation which sells fruit juices to both manufacturers and consumers. The Defendant, ABC, is a Connecticut company which manufactures and sells fruit juice concentrate. Leonard Riley (hereinafter Riley) was the President of US Juice at all relevant times. Jim Fitzgerald (hereinafter Fitzgerald) was employed at ABC at all relevant times.

According to US Juice's Complaint (#1) and Amended Complaint (#5), in June 2002, Riley met with Fitzgerald at the latter's office in Connecticut, to discuss creating an Agreement. When Riley asked Fitzgerald if he was the owner of ABC, US Juice alleges that Fitzgerald answered that he was a minority owner, director, and officer of ABC. US Juice alleges that Riley assumed from this representation that Fitzgerald was a decision maker with the authority to enter into binding agreements.

In or about October 2002, US Juice alleges that they entered into the Agreement with ABC, whereas ABC states that this formal Agreement is not binding. According to US Juice, they wrote an Agreement and sent it to ABC. The terms of the Agreement were that ABC was to manufacture and deliver fruit juice concentrate to US Juice's customers and US Juice was to purchase this product. The Agreement contained an indemnification clause, stating that ABC would indemnify US Juice for problems arising out of ABC's product. The Agreement also contained a forum selection clause which stated that the laws of Nevada would apply to any disputes. The Agreement further stated that venue and jurisdiction would be proper in the state and federal courts of Nevada.

Approximately a week after receiving the Agreement, Fitzgerald responded to Riley with an email, which it appears that US Juice alleges was ABC's acceptance of the Agreement. However, ABC and US Juice disagree as to Fitzgerald's decision-making authority. ABC claims that Fitzgerald was only its salesman in charge of the US Juice account, who lacked decision-making authority, while US Juice claims that Fitzgerald did have such authority.

After the October Agreement was sent to ABC, ABC began manufacturing the product and US Juice began purchasing it. In or about December 2002, US Juice sent a second written Agreement, which US Juice alleges was substantially similar to the October version. In opposition, ABC alleges that the two Agreements were significantly different from each other and that ABC never agreed to any of the versions.

In May of 2003, US Juice began to receive quality complaints from its customers about ABC's product. As a result of these complaints, US Juice was required to take back the faulty product from its customers and suffered an estimated $200,000 loss. US Juice informed ABC of the problem and requested ABC to reimburse them for the loss. ABC refused and in response US Juice filed a Complaint (#1) on March 8, 2006, against ABC, under the Agreement's indemnity and forum selection clauses asserting nine causes of action.

On May 12, 2006, ABC filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), (2), and (3). ABC argues that they never signed any version of the written Agreement with US Juice. Therefore, ABC argues that since the Agreement is invalid, then US Juice's assertion of subject matter, forum selection, and venue based on it are invalid. In opposition, US Juice argues the Agreement is valid and their Complaint should not be dismissed.

## DISCUSSION

**I. Motion to Dismiss Standards**

**A. 12(b)(1) - Subject Matter Jurisdiction**

A defendant may move for a dismissal based on a lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between diverse corporations or corporations that are incorporated in or have their principle place of business in different states. 28 U.S.C. § 1332. In a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the reviewing court must accept as true the allegations of the complaint. *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). (citations omitted). For purposes of this inquiry, there is no difference between allegations and the underlying facts. *Id.*

**B. 12(b)(2) - Personal Jurisdiction**

A defendant may move to dismiss a complaint for lack of jurisdiction over the person. Fed. R. Civ. P. 12(b)(2). Where a defendant moves to dismiss a complaint for lack of

personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In the context of a Rule 12(b)(2) motion for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its favor. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1107 (9th Cir. 2002).

The exercise of personal jurisdiction over an out-of-state defendant is limited by the Due Process Clause of the Fourteenth Amendment. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-14 (1984). (citing *Pennoyer v. Neff,* 95 U.S. 714 (1878)). The cornerstone of the due process inquiry is an analysis of the defendant's contacts with the selected forum. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168-69 (9th Cir. 2006). (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The *International Shoe* case requires "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). (citations omitted). Thus where the defendant deliberately has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. *BurgerKing*, 471 U.S. at 475-76.

**C. 12(b)(3) - Venue**

Under Rule 12(b)(3), a defendant may move to dismiss a complaint for improper venue. For the purposes of venue a defendant corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391. The *Murphy* court held that in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving

party and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

## II. Validity of Unsigned Agreements

It is immaterial that one party fails to sign a written contract, if the agreement is signed by the other party. *J. A. Jones Constr. Co. v. Plumbers and Pipefitters Local 598*, 568 F.2d 1292, 1295 (9th Cir. 1978). The contract binds the non-signing party if (a) he accepts it and (b) both parties act in reliance on it as a valid contract. *Id.* The term "accepts" is defined as: "Conduct which imports acceptance is acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party." *N.L.R.B. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO*, 315 F.2d 695, 699 (3rd Cir. 1963).

## III. Validity of Forum Selection Clauses

The Ninth Circuit has held that forum selection clauses should be enforced as written. *See Mannetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). Forum selection clauses are prima facie valid and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching. *Id.* (citation omitted).

## IV. Application

US Juice has alleged sufficient facts to show that the Agreement is valid and meets the two prongs of *J. A. Jones*. The first prong of the *J. A. Jones* standard requires ABC's acceptance of the Agreement. *J. A. Jones* does not require a subjective manifestation of intent to accept, or a true meeting of the minds, to form a contract. Instead, *J. A. Jones* only requires an objective manifestation of acceptance from ABC. US Juice alleges that on October 10, 2002, after receiving the October version of the written Agreement, Fitzgerald emailed Riley and indicated that the Agreement was satisfactory to ABC. US Juice appears to allege that this email serves as ABC's acceptance because Fitzgerald had binding decision-making authority. Therefore, the Court finds that US Juice has alleged sufficient facts to show ABC's acceptance of the Agreement.

ABC alleges that US Juice sent them two significantly different Agreements, one version in October and another version in December.  ABC argues that this difference indicates that the two parties had never finished negotiating and there was never any final agreement between them.  However, according to US Juice the two versions of the Agreement were substantially similar.  Viewing the facts in a light most favorable to US Juice, the Court assumes that the various versions of the Agreement were similar.  Also, given that ABC began producing the product and selling it to US Juice indicates that an Agreement was reached and that negotiations were completed.

The second prong of the *J.A. Jones* standard requires both parties to act in reliance on the Agreement.  US Juice has alleged facts which show ABC's reliance, such as their production of the product, distribution of it to US Juice's customers, and acceptance of money in return from US Juice.  US Juice's reliance is shown by their ordering the product from ABC and paying for that product.

After considering the matter, the Court will deny ABC's Motion to Dismiss.  The Court finds that US Juice has alleged sufficient facts to show that there was an Agreement.  If the Agreement itself is valid, then both the indemnification clause and the forum selection clauses are also valid.  The Ninth Circuit assumes that a forum selection clause is prima facie valid, and its enforcement here does not seem unjust.  Therefore, US Juice has a valid cause of action against ABC, and personal jurisdiction and venue are proper in this Court.

ABC fails to make a clear argument why this Court does not have subject matter jurisdiction.  Nevertheless the Court finds that it has subject matter jurisdiction over this dispute.  Under *Hughes*, the Court must accept the allegations in US Juice's Complaint as true, which state that the instant case is a civil action, the matter in controversy exceeds the sum of $75,000, and the two corporations are diverse.  *Hughes*, 243 F.3d at 1189.  Therefore, pursuant to 28 U.S.C. § 1332 this Court has original jurisdiction.

/ / / /

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#19) is DENIED.

Dated: July 18, 2006

_____
**ROGER L. HUNT**
**United States District Judge**